**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATALY VANESSA PEREZ CENTENO, <br><br> Petitioner, <br> v. <br><br> TODD BLANCHE, et al., <br><br> Respondents. | No. 5:26-cv-4069-DSR <br><br> **ORDER GRANTING UNOPPOSED PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

## 1.   INTRODUCTION AND BACKGROUND

On July 21, 2026, Petitioner Nataly Vanessa Perez Centeno, A No. 200628225, filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  See Doc. No. 1.  Petitioner, a non-citizen who has been detained in Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Detention Center since July 14, 2026, challenges her ongoing detention as violative of, inter alia, her right to due process.  Id.  The Petition names as Respondents the Acting Attorney General of the United States, the Secretary of the Department of Homeland Security, the United States Department of Homeland Security ("DHS"), the Acting Director of ICE, the Warden of Adelanto Detention Facility where Petitioner is being held, and the Acting ICE Field Office Director, each in his or her official capacity (collectively "Respondents").  Id.

Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in

this case, including trial and the entry of judgment.  See Doc. No. 3.  The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 5); see also Doc. No. 7.

According to the uncontroverted facts alleged in the verified Petition, Petitioner is a citizen of Honduras.  Id. at ¶ 2.  She entered the United States in approximately November 2019 after fleeing Honduras due to the domestic violence, sexual violence, and torture she experienced at the hands of her former domestic partner, a high-ranking member of the Sinaloa Cartel.  Id.  Upon entry, Petitioner was given a credible fear interview and received a positive determination.  Id. at ¶ 3.  Her case then proceeded to withholding-only proceedings.  Id.  On March 20, 2023, an Immigration Judge granted Petitioner's application for withholding of removal under the Convention Against Torture ("CAT").  Id. at ¶ 4.  Following this CAT grant, Petitioner was released from ICE custody.  Id. at ¶ 6.

While living in the United States for over three years since then, Petitioner "incurred no criminal convictions, became engaged to a United States citizen, took on responsibility as caretaker for her fiancé's parents, and maintained gainful employment."  Id. at ¶¶ 7-9, 40.  Additionally, Petitioner never failed to comply with ICE check-ins or other requirements of her release.  Id. at ¶ 7.

On July 14, 2026, Petitioner was taken into ICE custody at Los Angeles Airport ("LAX") while traveling with her fiancé.  Id. at ¶ 10.  Petitioner's counsel reached out to the deportation officer ("DO") assigned to Petitioner's case to request details regarding Respondents' plan to remove Petitioner.  Id. at ¶ 13.  The DO informed counsel that Petitioner was being scheduled for a reasonable fear interview, but that interview has not occurred.  Id. at ¶¶ 14-16.  Petitioner is detained at the Adelanto ICE facility.  Id. at ¶ 10.  She argues that her release was unlawfully revoked and she was unlawfully re-detained.  Id. at ¶¶ 41-42.

On July 21, 2026, the Court entered the Notice of General Order 26-05 and Briefing Schedule.  See Doc. No. 5.  Therein, Respondents were directed "to show cause why the writ of habeas corpus should not be granted." Id. at 1.  On July 28, 2026, the United States Attorney's Office filed Respondents' Answer to the Petition.  See Doc. No. 8.  The Answer states, "Respondents are not presenting an opposition argument to the Petition at this time." Id. at ECF p. 2.

**2.      PETITIONER'S CLAIM AND LEGAL STANDARD**

Petitioner challenges her detention as violating the Due Process Clause of the Fifth Amendment.  See Pet. at ¶ 25.  She had been living freely in the United States since the Immigration Judge granted her withholding of removal under CAT. Id. at ¶ 40.  She received no process prior to her re-detention on July 14, 2026, to determine the legality and necessity of her re-detention. Id. at ¶ 41.  Respondents do not contest either point in their Answer.  See Answer.

This Court may grant a writ of habeas corpus where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241.  The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the

requirements of due process . . .." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

**3.    DISCUSSION**

Pursuant to 28 U.S.C. § 2243 and General Order 26-05, Respondents were ordered to show cause why the writ of habeas corpus should not be granted.  See Doc. No. 5 at 1:23-24.  Respondents expressly and affirmatively declined to show any such cause, stating in their Answer only that they "are not presenting an opposition argument to the habeas petition at this time."  See Doc. No. 8 at 2:4-5.

4

The writ therefore should issue ordering Petitioner's immediate release from Respondents' custody.  See also C.D. Cal. L.R. 7-12; Singh v. Chiang, No. 5:25-cv-030240-FMO-SP, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument."); Soleimani v. Larose, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) ("By failing to respond to the claims actually asserted, Respondents have conceded the claims.").

The Court therefore concludes that Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment.  See, e.g., J.D. B.R. v. Wofford, No. 1:25-CV-02009-TLN-CKD, 2026 WL 234661, at *3 (E.D. Cal. Jan. 29, 2026) (due process requires hearing before neutral decisionmaker prior to re-detention based on revocation of supervised release).  The Court further concludes that "Petitioner's release is necessary to return [them] to the status quo."  Nazarian v. Noem, No. 5:25-cv-02694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's supervised release before her July 14th re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.  Respondent offers no opposition to such relief.  See Answer at ECF p. 2.  Such relief is therefore ordered.[1]

Restoring Petitioner to the status quo means release under the same conditions that were in place at the time of the unconstitutional re-detention on

---

[1]    Because Petitioner is entitled to release on due-process grounds, it is unnecessary to reach her alternative statutory arguments under 8 U.S.C. § 1231(a)(6) and 8 C.F.R. §§ 241.1, 241.13.

July 14, 2026.  For the same reason that Respondents may not revoke Petitioner's supervised release without affording her due process, they also may not change the conditions of that release without affording Petitioner due process.  This does not mean that Respondents can never change the conditions of Petitioner's release – only that they have to follow due process in doing so.  Return to the status quo similarly means return to Petitioner any personal property and documents seized from her at the time of her re-detention.

Petitioner also requests in her prayer for relief an injunction prohibiting "Respondents from proceeding with any reasonable fear interview or other removal-related proceeding without providing Petitioner and undersigned counsel reasonable advance notice and an opportunity to be present, consistent with counsel's July 16, 2026 request to the Asylum Office."  Pet. at 10:22-26 (prayer ¶ 7).  While habeas relief is not limited to "discharge of the applicant from physical custody," Carafas v. LaVallee, 391 U.S. 234, 239 (1968), and Section 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require," entry of a permanent injunction like Petitioner requests with regard to a reasonable fear interview or other removal-related proceedings requires that she show (1) that she suffered irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  Moreover, "injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin all possible breaches of the law." Zepeda v. U.S. I.N.S., 753 F.2d 719, 729, n.1 (9th Cir. 1983) (internal quotations and citations omitted).

Here, although Respondents do not oppose the prospective injunctive relief Petitioner seeks regarding a future reasonable fear interview or other removal-

related proceedings, Petitioner herself has not shown that she has suffered, or will suffer, any irreparable harm in that regard.  In other words, Petitioner has not shown that Respondents will, absent an injunction from this Court, proceed with a reasonable fear interview or other removal-related proceeding without proper notice and an opportunity to be heard.  The requested prospective injunction thus goes beyond the specific harm shown by Petitioner and instead seeks to enjoin all possible breaches of the law.  The Court does not find it appropriate to enter an injunction in that regard at this time on this record.

**4.    CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a writ of habeas corpus should issue pursuant to 28 U.S.C. § 2241 compelling her immediate release, subject only to the same conditions as existed before her July 14, 2026, detention.

**IT IS THEREFORE ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner **Nataly Vanessa Perez Centeno (A-200-628-225)** from custody, reinstate her release under the same conditions that were in place before her re-detention on July 14, 2026, and return any personal property and documents seized at the time of her detention.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4. Within three days of the date of this Order, Respondents shall file a Status Report confirming Petitioner's release and return of her personal property and documents.

5. Petitioner's request for prospective injunctive relief regarding a future reasonable fear interview or other removal-related proceeding is denied at this time.

6. The Court will issue on a separate form Judgment consistent with this Order.

IT IS SO ORDERED.

DATED: July 31, 2026

_____
HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE